MARY STROW AND OTHERS v. EDWARD CURDS' EX'RS, ETC.

**Trusts—Purchase of Trust Property by Trustee.**

Where a trustee obtained title to the land of the cestuius que trusts who were infants, under circumstances indicating the sale to himself, and made a profit out of the transaction, the title must be regarded as being held for the benefit of the cestuis que trusts.

**Trusts—Trustee Must Account for Profits.**

Where a trustee sold portions of the trust estate, the trustee's esate must account to the cestius que trust for the profits made therefrom, and the trustee's executors, devisees, and heirs hold the legal title to the unsold portion of the trust estate for the same purpose and to the same use as the trustee.

APPEAL FROM McCRACKEN CIRCUIT COURT.

December 16, 1872.

OPINION BY JUDGE LINDSAY:

Appellants do not complain that the judgments in their favor for money on account of the personal assets of the estate of the testator Sledd were for too little, but insist that the chancellor erred in dismissing their petition in respect to the Hancock Seminary lands.

John Sledd, by his last will and testament, which was duly probated in 1845, nominated and appointed S. C. Thompson and P. H. Beckham the executors thereof, which offices they accepted.

The tenth item of this will is in these words:

"I devise and bequeath my undivided third of four thousand acres of land lying in Graves and Hickman, purchased of the Hancock County Court, for the purpose of paying off whatever amounts I may be indebted to my three nephews above named (the children of his deceased brother, Seaton Sledd). Said lands being now owned jointly by S. C. Thompson, Edward Curd and myself.

"I hereby fully authorize my executors to sell and convey my interest in the same or to join said Thompson and Curd in conveying the same at their (my executors') discretion."

Within a few months after his qualification as executor S. C. Thompson was appointed guardian for the three infant children of Seaton Sledd, deceased.

On the 16th of May, 1846, a little more than one year after the

testator's death, Thompson and Beckham, his executors, sold and conveyed the undivided one-third of the lands mentioned in the clause of the will quoted, to Edward Curd for the sum of $666.66, or at the rate of fifty cents per acre. By a deed bearing date the 28th of July thereafter, but which, according to the certificate of the clerk, was acknowledged on the 27th of June, Curd conveyed back to Thompson one-half of their interest for exactly one-half of the amount paid by him.

Appellees charge that these two conveyances were mere shams; that in point of fact Thompson, the executor, was interested in the original purchase by Curd and that it was all the while understood and agreed that he should own one-half the interest in the lands which he and his co-executor were ostensibly selling to Curd. It is also charged and not denied that within five or six years after that transaction Thompson and Curd sold portions of that land for more than double the amount paid for it, and that when the suit was instituted in 1859 much of it was worth ten times the amount paid. It is also claimed that Curd was a party to the alleged breach of trust upon the part of Thompson, and he, being his administrator, and his heirs were made parties.

Appellants prayed that the two deeds should be cancelled, and they be reinvested with title to so much of the undivided interest in the lands so owned by their deceased father, as had not been sold by Thompson and Curd to innocent purchasers, and that the amounts realized from any sales so made should be adjudged to them, they offering to account for the amount paid by Curd to the executors when he bought. All charges as to bad faith, breach of trust, or combination between Thompson and Curd were sufficiently denied, and it was insisted that the sale of the land was judicious and the price realized was its full value at the time.

The evidence as to the value of the lands is conflicting. But it is to be observed that none of the witnesses fix the average value of unimproved land in that section of the country in 1846 at less than fifty cents per acre, and also that the recollection of most of appellees' witnesses as to the value of lands in the county of Graves is founded upon one or two decretal sales which took place in that county in 1846 or thereabouts. There is scarcely a witness who pretends that at that time average lands were sold for any such price at private sales. Upon the other hand the wit-

nesses examined by appellants fix the lowest value for such lands in the two counties at one dollar per acre and some of them at more than that price. One witness who is uncontradicted and unimpeached swears that before the transactions between himself and Curd, gave it as his opinion that the purchase of Sledd's interest in these lands would be a good investment. That there was a speculation in it, and that he proposed to the witness to join with himself and Curd in making the purchase. It is certain that thereupon the executor made profit out of the sale to Curd and the subsequent purchase by himself of the lands conveyed to him by the testator.

The sale and purchase transpiring as they did within less than three months, according to the date of the two deeds, and within less than two months as shown by the clerk's certificate, are, to say the least, circumstances calculated to excite suspicion, and unexplained. The presumption that the ostensible sales and conveyances were but means resorted to for the purpose of settling the trust property into the hands of the trustee is very strong.

The discrepancy between the date in the body of Curd's deed and that of the clerk's certificate of its acknowledgment is also a suspicious circumstance.

The certificate of the clerk being an official act, we must assume that he gave the correct date, and we can account for the different date set out in the face of the deed upon no other hypothesis than that the parties felt the necessity of making it appear that at least a reasonable time had elapsed between the two sales.

The testimony is not sufficient to authorize relief against Curd's heirs. He was a stranger to the cestui que trusts, and the onus was upon them to establish satisfactorily that he knowingly participated in the breach of trust charged against the executor. This they have not done, but Thompson does not occupy the same attitude with Curd.

He was a trustee. He obtained title to the estate of his cestui que trusts who were at the time infants, under circumstances indicating a sale to himself. He made profit out of the transaction. Under such a state of the case the chancellor will, without further inquiry regard the title as being held for the benefit of the infant cestui que trusts; he can not refuse to require the trustee to show the utmost fairness in his dealings with their property. The good faith and honesty of purpose presumed by the law in ordinary

transactions between strangers must be clearly proved in a case like this. *Richardson, Adm'r, v. Spence,* 18 B. Monroe 450. Judge Story states the doctrine to be even stricter than this. He lays it down as a general rule that the trustee is bound not to do anything which can place him in a position inconsistent with the interests of the trust, or which may have a tendency to interfere with his duty in discharging, etc., and that executors and administrators will not be permitted under *"any circumstances"* to derive a personal benefit from the manner in which they transact the business or manage the assets of the estates committed to them. Equity Jurisprudence, Sec. 321. In this case we need not go so far. Thompson has not satisfactorily explained the manner in which he became invested with the title to a portion of the trust estate. The fact that he expressed to his son a disinclination to purchase from Curd, and that he appeared to act upon his son's advice in making the purchase, is not necessarily inconsistent with the idea that it was all the while understood that he was to have an interest in the lands in case he chose to take it.

He does not show that it was necessary to sell at the time, and indeed the money judgments against his executor and devisees in this action show very clearly that no necessity for the sale existed.

Under such circumstances it is no excuse that the executors had full and complete power to sell. Whilst the testator set apart and dedicated his interest in these lands to the payment of what he might owe his brother's children, he did not intimate that he intended it to be sold, even though it should turn out that there was no necessity whatever for the sale. No reason is given why the lands were sold for cash in hand instead of on a reasonable credit. The fact that the testator's widow was desirous that the sale should be made, and the debt to Seaton Sledd's children paid so that the interest thereon should cease to accrue, was the result of her ignorance of the fact that the personal assets in the hands of the executors was sufficient to discharge the indebtedness without the sale, and the executors, instead of acting upon the requests made by her, should have disabused her mind and allayed her apprehensions.

The petition of appellees was properly dismissed as to Curd's administrator and heirs, and also as to the various persons who bought from Thompson and Curd after they were invested with title to Sledd's interest in them. But upon a careful examination of the

record we are constrained to adjudge that it was error to dismiss as to the executor's devisees and heirs of Thompson.

The title acquired by Thompson under the deed from Curd, he held for the benefit of Sledd's devisees. Whatever profits he made by the subsequent sales of the interest so acquired his estate must account for to his cestui que trusts, and as his executors, devisees and heirs hold the legal title to the unsold portion of the estate for the same purpose and to the same use they should have been compelled to relinquish the same to appellants.

The judgment refusing them relief as to said lands is therefore reversed and the cause remanded for a judgment conformable to this opinion. Upon the return of the cause, if further preparation should be necessary, reasonable time therefor should be allowed. From the endorsement on the record made by appellants' attorney it appears that Wm. E. Sledd did join in the prosecution of this appeal.

The judgment of the chancellor as to him therefore remains undisturbed.

*P. Palmer, for appellant.*

*Bigger, Moss, for appellees.*